**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| **MALIKIE INNOVATIONS LTD. AND KEY PATENT INNOVATIONS LTD.,**<br><br>Plaintiffs,<br>**v.**<br><br>**STELLANTIS N.V., FCA US LLC, AND STELLANTIS FINANCIAL SERVICES INC., d/b/a 1ST INVESTORS FINANCIAL SERVICES, d/b/a FIRST INVESTORS FINANCIAL SERVICES,**<br><br>Defendants. | Case No. 2:26-cv-2475<br><br>Jury Trial Demanded |

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiffs Malikie Innovations Ltd. ("Malikie") and Key Patent Innovations Ltd. ("KPI") (collectively, "Plaintiffs"), by and through their undersigned counsel, bring this Original Complaint for patent infringement against Defendants Stellantis N.V., FCA US LLC, and Stellantis Financial Services Inc., d/b/a 1st Investors Financial Services, d/b/a First Investors Financial Services (collectively, "Stellantis" or "Defendants"), alleging as follows:

**BACKGROUND AND NATURE OF THE SUIT**

1. This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code. This case asserts infringement of United States Patent Nos. 8,503,936 ("the '936 Patent"), 9,111,170 ("the '170 Patent"), 8,781,451 ("the '451 Patent"), RE48,212 ("the '212 Patent"), 7,917,829 ("the '829 Patent"), and 8,291,289 ("the '289 Patent") (collectively, "the Patents-in-Suit").

## THE PARTIES

2. Plaintiff Malikie is the successor-in-interest to a substantial patent portfolio created and procured over many years by BlackBerry Ltd., formerly known as Research in Motion Ltd., and its predecessor, subsidiary, and affiliated companies (collectively, "BlackBerry"). Malikie is an Irish entity duly organized and existing under the laws of Ireland. Malikie has registered offices at: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

3. Plaintiff KPI is the beneficiary of a trust pursuant to which Malikie owns, holds, and asserts the Patents-in-Suit. KPI is an Irish entity duly organized and existing under the laws of Ireland. KPI has registered offices at: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

4. Defendant Stellantis N.V. is a corporation organized and existing under the laws of the Netherlands with its principal place of business at Taurusavenue 1, 2132 LS, Hoofddorp, Netherlands. Stellantis N.V. is engaged in making, using, offering for sale, selling and/or importing vehicles to and throughout the United States, including this District, having infotainment systems with navigation, driver assist, and/or multimedia device integration capabilities (the "Accused Instrumentalities").

5. Defendant FCA US LLC is a Delaware corporation with a regular and established place of business located at 1000 Chrysler Drive, Auburn Hills, Michigan 48326. On information and belief, FCA US LLC is responsible for research and development, design, manufacturing, offers for sale, marketing, importation, and distribution of automotive vehicles from Stellantis-managed brands (e.g., Alfa Romeo, Chrysler, Dodge, Fiat, Jeep, Maserati, Peugeot, and Ram) in the United States, including this District. FCA US LLC may be served with process through its registered agent, C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

6. Defendant Stellantis Financial Services, Inc. is a Texas corporation with a regular and established place of business located at 5757 Woodway Drive, Suite 400, Houston, Texas 77057. Stellantis Financial Services, Inc. may be served with process through its registered agent, Corporation Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

**JURISDICTION AND VENUE**

7. This action arises under the patent laws of the United States, 35 U.S.C. § 101, et seq. This Court's jurisdiction over this action is proper under the above statutes, including 35 U.S.C. § 271, et seq., 28 U.S.C. § 1331 (federal question jurisdiction), and § 1338 (jurisdiction over patent actions).

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9. For each Defendant, venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b).

10. Venue is proper as to Stellantis N.V. in this District pursuant to 28 U.S.C. § 1391 because, among other things, Stellantis N.V. is not resident in the United States, and thus may be sued in any judicial district, including this one, pursuant to 28 U.S.C. § 1391(c)(3). *See In re HTC Corp.*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) ("The Court's recent decision in TC Heartland does not alter" the alien-venue rule.).

11. FCA US LLC has at least one regular and established place of business in this District, including at least the facility at 105 Decker Drive, Suite 300, Irving, Texas 75062. Stellantis Financial Services, Inc. has a regular and established place of business in this District,

including at least its facilities in Dallas, Texas, such as those located at 2975 Regents Blvd., Suite 100, Irving, Texas 75063 and 300 E. John Carpenter Freeway, Suite 600, Irving, Texas 75062.[1]

**Licensees and Existing Branches** — **PDT: 6/25/2026 4:41PM**

**Motor Vehicle Sales Finance**

**013013** **Stellantis Financial Services, Inc., D/B/A 1st Investors Financial Services, D/B/A First Investors Financial Services**
**5757 Woodway Suite 400 Houston, TX 77057** ***Contact: Mr. Jonathan C. Poss - (770) 956-3888*** ***Filing Status:*** Current - Licensed ***Expires Date:*** 12/31/2026

***Branches / Locations:***

| License # | Address | Filing Status | Expires Date |
|---|---|---|---|
| 038243 | 3065 Akers Mill Road Suite 700 Atlanta, GA 30339 | *Current - Licensed* | 12/31/2026 |
| 041035 | 300 E. John Carpenter Freeway Suite 600 Irving, TX 75062 | *Current - Licensed* | 12/31/2026 |

**2 Additional Locations** Listed for File # **013013**

Source: https://banking.delaware.gov/wp-content/uploads/sites/73/2026/06/WEB-JUN-26-Motor-Vehicle-Sales-Finance.pdf. Additionally, Defendants have and continue to commit acts of infringement in this District through the marketing, distribution, use, sale, service, support, financing, and/or repair/maintenance of Stellantis vehicles in this District.

12. As discussed in detail herein, Defendants have infringed (literally and/or under the doctrine of equivalents), directly, indirectly, and/or through subsidiaries, agents, representatives, or intermediaries, one or more claims of each of the Patents-in-Suit by making, using, selling, offering for sale, and/or importing into the United States Stellantis vehicles and mobile applications with the features described in the charts attached hereto as Exhibits 7-12 (collectively the "Accused Instrumentalities").

---

[1] *See, e.g.*, https://www.stellantis-fs.com/Dealers/ContactUs; https://www.stellantis-fs.com/ManageMyAccount; https://www.factorywarrantylist.com/first-investors-payoff-address.html. *See also, e.g.*, https://www.linkedin.com/jobs/view/4424623009/; https://www.linkedin.com/jobs/view/4416156843/; https://www.linkedin.com/jobs/view/4443939070/; https://www.linkedin.com/jobs/view/4442904525/; https://www.linkedin.com/jobs/view/4442235284/ (Stellantis Financial Services job postings listing "on-site" and "hybrid" positions available at the Stellantis Financial Services facilities in Dallas, Texas).

13. Through offers to sell, sales, imports, distributions, and other related agreements to transfer ownership of Defendants' Accused Instrumentalities by and/or to affiliates, distributors, subsidiaries, suppliers, retail partners, customers, agents, and/or other Defendants, Defendants are operating in (and have operated in) and maintaining (and have maintained) a significant business presence in the U.S. and/or through their U.S. subsidiaries or agents, Defendants do business in the U.S., the state of Texas, and in the Northern District of Texas.

14. On information and belief, Defendants place, have placed, and contributed to placing Accused Instrumentalities into the stream of commerce via an established distribution channel knowing or understanding that such products would be sold and used in the United States, including in this judicial district. On information and belief, Defendants have also derived substantial revenues from infringing acts in this District, including from the sale and use of the Accused Instrumentalities.

15. Defendants are subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute because, *inter alia*, (i) Defendants have done and continue to do business in Texas and (ii) Defendants have, directly and through intermediaries, committed and continue to commit acts of patent infringement in the State of Texas, including making, using, offering to sell, and/or selling Accused Instrumentalities in Texas, and/or importing Accused Instrumentalities into Texas, either directly or vicariously, inducing others to commit acts of patent infringement in Texas, and/or committing a least a portion of any other infringements alleged herein. Defendants have placed, and continue to place, infringing products into the stream of commerce, via established distribution channels, with the knowledge and/or understanding that such products are sold in Texas, including in this District. Defendants have derived substantial revenues from their infringing acts occurring within Texas and within this

District. Defendants have substantial business in this State and judicial district, including: (a) at least part of its infringing activities alleged herein; and (b) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported, and services provided to Texas residents vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers.

16. Exercising personal jurisdiction over Defendants in this District would not be unreasonable given Defendants' contacts in this District, the interest in this District of resolving disputes related to products sold herein, and the harm that would occur to Plaintiffs.

17. In addition, Defendants have knowingly induced infringement within this District by advertising, marketing, offering for sale, selling, testing, demonstrating, and/or otherwise encouraging use of infringing products within this District to consumers and providing instructions, user manuals, demonstrations, test drives, advertising, and/or marketing materials which facilitate, direct, or encourage the use of infringing functionality with knowledge thereof.

18. Personal jurisdiction also exists specifically over Defendants because they transact business in this State or purposefully directed at this State (including, without limitation, retail stores) by making, importing, offering to sell, selling, and/or having sold infringing products within this State and District or purposefully directed at this State or District.

## THE PATENTS-IN-SUIT

### The '936 Patent

19. The '936 Patent, entitled "System and method for navigating between user interface elements across paired devices," duly and legally issued on August 6, 2013, from U.S. Patent

Application No. 13/619,670, filed on September 14, 2012, naming Chris Kermoian and Joseph Goguen as the inventors. A copy of the ’936 Patent is attached hereto as Exhibit 1.

20. The ’936 Patent claims priority to U.S. Patent Application No. 13/397,533, which was filed on February 15, 2012 and issued as U.S. Patent No. 8,634,807. The ’936 Patent also claims priority to U.S. Provisional Application Nos. 61/548,145, filed on October 17, 2011; 61/555,836, filed on November 4, 2001; and 61/555,984, filed on November 4, 2011.

21. The ’936 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

22. Malikie is the assignee of and owns all rights, title, and interest to the ’936 Patent. KPI is the beneficiary of a trust of which Malikie is the trustee and holds, owns, and asserts the ’936 Patent for the benefit of KPI.

23. Plaintiffs have standing to sue for infringement of the ’936 Patent.

**The ’170 Patent**

24. The ’170 Patent, entitled “Methods and apparatus relating to text items in images,” duly and legally issued on August 18, 2015, from U.S. Patent Application No. 14/091,195, filed on November 26, 2013, naming Wade Tsai, David Sutton, Jean-Francois Desgagne, and Ryan Josal as the inventors. A copy of the ’170 Patent is attached hereto as Exhibit 2.

25. The ’170 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

26. Malikie is the assignee of and owns all rights, title, and interest to the ’170 Patent. KPI is the beneficiary of a trust of which Malikie is the trustee and holds, owns, and asserts the ’170 Patent for the benefit of KPI.

27. Plaintiffs have standing to sue for infringement of the ’170 Patent.

**The ’451 Patent**

28. The ’451 Patent, entitled “System and method for providing traffic notifications to mobile devices,” duly and legally issued on July 15, 2014, from U.S. Patent Application No. 13/720,312, filed on December 19, 2012, naming Christopher Wormald, Areangelo Loberto, and Raymond Reddy as the inventors. A copy of the ’451 Patent is attached hereto as Exhibit 3.

29. The ’451 Patent is a continuation of U.S. Patent No. 8,351,912, which issued on January 8, 2013 from U.S. Patent Application No. 12/333,495, filed on December 12, 2008.

30. The ’451 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

31. Malikie is the assignee of and owns all rights, title, and interest to the ’451 Patent. KPI is the beneficiary of a trust of which Malikie is the trustee and holds, owns, and asserts the ’451 Patent for the benefit of KPI.

32. Plaintiffs have standing to sue for infringement of the ’451 Patent.

**<u>The ’212 Patent</u>**

33. The ’212 Patent, entitled “Structured Low-Density Parity-Check (LDPC) Code,” duly and legally issued on September 15, 2020, from U.S. Patent Application No. 15/838,188, filed on December 11, 2017, naming Michael Livshitz, Aleksandar Purkovic, Nina Burns, Sergey Sukhobok, and Muhammad Chaudhry as the inventors. A copy of the ’212 Patent is attached hereto as Exhibit 4.

34. The ’212 Patent is a reissue of U.S. Patent No. 8,301,975, which issued on October 30, 2012 from U.S. Patent Application No. 13/156,942, filed on June 9, 2011. The ’212 Patent claims priority to U.S. Patent Application No. 14/527,483, which was filed on October 29, 2014 and issued as U.S. Patent No. RE46,692, which was a reissue of U.S. Patent No. 8,301,975. The ’212 Patent also claims priority to U.S. Patent Application No. 11/665,171, which was filed on October 12, 2005 and on July 29, 2008 as PCT Application No. PCT/CA2005/001563 and which

issued as U.S. Patent No. 7,996,746. The ’212 Patent also claims priority to U.S. Provisional Application Nos. 60/763,323, filed on April 20, 2005; 60/656,587, filed on February 25, 2005; 60/647,259, filed on January 26, 2005; 60/639,420, filed on December 27, 2004; 60/638,832, filed on December 22, 2004; 60/635,525, filed on December 13, 2004; 60/627,348, filed on November 12, 2004; and 60/617,902, filed on October 12, 2004.

35. The ’212 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

36. Malikie is the assignee of and owns all rights, title, and interest to the ’212 Patent. KPI is the beneficiary of a trust of which Malikie is the trustee and holds, owns, and asserts the ’212 Patent for the benefit of KPI.

37. Plaintiffs have standing to sue for infringement of the ’212 Patent.

**<u>The ’829 Patent</u>**

38. The ’829 Patent, entitled “Low Density Parity Check (LDPC) Code,” duly and legally issued on March 29, 2011, from U.S. Patent Application No. 12/796,453, filed on June 8, 2010, naming Michael Livshitz as the inventor. A copy of the ’829 Patent is attached hereto as Exhibit 5.

39. The ’829 Patent claims priority to U.S. Patent Application No. 11/393,622, which was filed on March 30, 2006 and issued as U.S. Patent No. 7,752,521. The ’829 Patent also claims priority to PCT Application No. PCT/CA2005/001563, filed on October 12, 2005. The ’829 Patent also claims priority to U.S. Provisional Application Nos. 60/635,525, filed on December 13, 2004; 60/617,902, filed on October 12, 2004; 60/627,348, filed on November 12, 2004; 60/638,832, filed on December 22, 2004; 60/639,420, filed on December 27, 2004; 60/647,259, filed on January 26, 2005; 60/656,587, filed on February 25, 2005; 60/673,323, filed on April 20, 2005; and 60/727,932, filed on October 18, 2005.

40. The ’829 Patent claims patent-eligible subject matter under 35 U.S.C. §101.

41. Malikie is the assignee of and owns all rights, title, and interest to the ’829 Patent. KPI is the beneficiary of a trust of which Malikie is the trustee and holds, owns, and asserts the ’829 Patent for the benefit of KPI.

42. Plaintiffs have standing to sue for infringement of the ’829 Patent.

**The ’289 Patent**

43. The ’289 Patent, entitled “Low Density Parity Check (LDPC) Code,” duly and legally issued on October 16, 2012, from U.S. Patent Application No. 13/346,155, filed on January 9, 2012, naming Michael Livshitz as the inventor. A copy of the ’289 Patent is attached hereto as Exhibit 6.

44. The ’289 Patent claims priority to U.S. Patent Application No. 12/987,729, which was filed on January 10, 2011 and issued as U.S. Patent No. 8,099,646. The ’289 Patent also claims priority to U.S. Patent Application No. 12/796,453, which was filed on June 8, 2010 and issued as the ’829 Patent. The ’289 Patent also claims priority to U.S. Patent Application No. 11/393,622, which was filed on March 30, 2006 and issued as U.S. Patent No. 7,752,521. The ’289 Patent also claims priority to PCT Application No. PCT/CA2005/001563, filed on October 12, 2005. The ’289 Patent also claims priority to U.S. Provisional Application Nos. 60/617,902, filed on October 12, 2004; 60/627,348, filed on November 12, 2004; 60/635,525, filed on December 13, 2004; 60/638,832, filed on December 22, 2004; 60/639,420, filed on December 27, 2004; 60/647,259, filed on January 26, 2005; 60/656,587, filed on February 25, 2005; 60/673,323, filed on April 20, 2005; and 60/727,932, filed on October 18, 2005.

45. The ’289 Patent claims patent-eligible subject matter under 35 U.S.C. § 101.

46. Malikie is the assignee of and owns all rights, title, and interest to the ’289 Patent. KPI is the beneficiary of a trust of which Malikie is the trustee and holds, owns, and asserts the ’289 Patent for the benefit of KPI.

47. Plaintiffs have standing to sue for infringement of the ’289 Patent.

## GENERAL ALLEGATIONS

48. Defendants do not have, and never have had, Plaintiffs’ permission to make, use, sell, offer to sell, or import products or practice methods that are covered by one or more claims of any of the Patents-in-Suit.

49. Defendants have made, used, sold, offered to sell, and/or imported into the United States products that infringe (directly and/or indirectly) one or more claims in each of the Patents-in-Suit.

50. Defendants have infringed (literally and/or under the doctrine of equivalents), directly, indirectly, and/or through subsidiaries, agents, representatives, or intermediaries, one or more claims of each of the Patents-in-Suit by making, using, importing, testing, demonstrating, marketing, promoting, repairing, offering and conducting test drives of, selling, and/or offering for sale in the United States the Accused Instrumentalities.

51. Defendants’ customers have directly infringed the Patents-in-Suit by using the Accused Instrumentalities.

52. Defendants are in the business of selling, including assisting with financing the sales of, the Accused Instrumentalities and encouraging and helping their dealers and/or customers to use the Accused Instrumentalities, including in an infringing manner. Through at least their product manuals, websites, sales and marketing activities, and/or financing practices, including their terms, contracts, and agreements, Defendants have and continue to (where applicable) solicit,

instruct, encourage, and aid and abet their dealers and/or customers to purchase and use the Accused Instrumentalities in an infringing way. *See, e.g.*, https://www.stellantis.com/en; https://www.stellantis.com/en/brands; https://www.stellantis-fs.com/; https://www.mopar.com/en-us/my-vehicle/vehicle-information.html; https://stellantisiop.com/iop/app/landing.

53. Defendants have had, or should have had, knowledge of the Patents-in-Suit at least through Plaintiffs' sending of (and Stellantis's receipt of) notice letters dated January 8, 2024, April 26, 2024, August 16, 2024, February 11, 2025,and June 6, 2025, as well as presentations on June 6, 2025 and May 4, 2026, which identified the '936 Patent, the '170 Patent, the '451 Patent, the '212 Patent, the '829 Patent, the '289 Patent, and additional patents, and the Accused Instrumentalities as infringing the Patents-in-Suit. In addition, or in the alternative, Defendants have had knowledge of the Patents-in-Suit through the service of this Complaint.

54. By receiving such notice of infringement, Defendants obtained a subjective belief that there is a high probability that the Accused Instrumentalities infringe the Patents-in-Suit. Despite being put on notice of infringement, on information and belief, Defendants have not taken any actions to avoid the conduct alleged to infringe and have not sought to remedy their infringements by offering to take a license. Defendants' failure to act reflects deliberate actions to avoid learning that the Accused Instrumentalities infringe the Patents-in-Suit and, more generally, a policy of not earnestly reviewing and respecting the intellectual property of others.

55. Defendants' actions after learning of the Patents-in-Suit were with specific intent to cause infringement of one or more claims of each of the Patents-in-Suit.

56. Further discovery may reveal earlier knowledge of one or more of the Patents-in-Suit, which would provide additional evidence of Defendants' specific intent, willful blindness, and/or willful infringement of the Patents-in-Suit.

57. Despite having knowledge of the Patents-in-Suit, as well as knowledge that they were directly and/or indirectly infringing one or more claims of each Patent-in-Suit, Defendants nevertheless proceeded to infringe the Patents-in-Suit, and induce others to do the same, with full and complete knowledge of the applicability of the Patents-in-Suit to the Accused Instrumentalities, without a license and without a good faith belief that the claims of the Patents-in-Suit were not infringed. As noted above, this includes, but is not limited to, the willful blindness of Defendants including their refusal to investigate whether the Accused Instrumentalities infringe the Patents-in-Suit.

58. Plaintiffs have been damaged as a result of Defendants' infringing conduct. Defendants are therefore liable to Plaintiffs in an amount that adequately compensates Plaintiffs for Defendants' infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

59. In addition, for the reasons discussed herein, Defendants' infringing activities detailed in this Complaint have been willful, egregious, wanton, and deliberate in disregard to Plaintiffs' rights, justifying a finding of willful infringement, enhanced damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

60. Defendants failed to obtain permission from Plaintiffs to make, use, sell, offer to sell, or import products incorporating the inventions claimed in the Patents-in-Suit including, but not limited to, the Accused Instrumentalities.

61. Malikie sent Stellantis a letter (addressed to Stellantis N.V. General Counsel, Mr. Giorgio Fossati), dated January 8, 2024, offering a license to Malikie's patent portfolio, identifying several of Malikie's patents, and identifying exemplary products or services that Malikie believes infringe those patents.

62. Malikie sent Stellantis a further letter (again addressed to Mr. Giorgio Fossati), dated April 16, 2024, offering a license to Malikie's patent portfolio, identifying several of Malikie's patents, and identifying exemplary products or services that Malikie believes infringe those patents.

63. Malikie sent Stellantis a further letter (again addressed to Mr. Giorgio Fossati), dated August 16, 2024, offering a license to Malikie's patent portfolio, including a license to its 802.11/Wi-Fi Alliance Standard Essential Patents ("SEPs") under terms that are fair, reasonable, and non-discriminatory ("FRAND").

64. Malikie sent Stellantis a further letter (again addressed to Mr. Giorgio Fossati), dated February 11, 2025, offering a license to Malikie's patent portfolio, identifying several of Malikie's patents, and identifying exemplary products or services that Malikie believes infringe those patents.

65. Malikie sent Stellantis a further letter (again addressed to Mr. Giorgio Fossati), dated June 6, 2025, offering a license to Malikie's patent portfolio, identifying several of Malikie's patents, and identifying exemplary products or services that Malikie believes infringe those patents.

66. The June 6, 2025 letter provided an updated patent portfolio presentation and a lump-sum offer to license Malikie's patent portfolio, including a lump-sum FRAND offer to license Malikie's 802.11 / Wi-Fi Alliance SEPs. Malikie made an updated rate presentation to

Stellantis and its outside counsel in May 2026, as well as engaged in lengthy correspondence with Stellantis and its outside counsel from November 2025 – May 2026.

67. Despite Malikie's repeated efforts to conduct good-faith licensing discussions with Stellantis over at least the last two and a half years, including the many notice letters, presentations, meetings, correspondence, and offers, none of the Defendants have negotiated in good faith and instead continue to make use of Malikie's patented technology without authorization. The parties' licensing negotiations have been unsuccessful for the simple reason that Defendants refuse to respond in any substantive manner or pay FRAND royalties for Malikie's valuable SEP portfolios.

## IEEE 802.11 STANDARDS AND PLAINTIFFS' FRAND OBLIGATIONS

68. The Institute of Electrical and Electronics Engineers ("IEEE") is a professional association that, among other activities, develops and publishes technical standards across a wide range of fields, including telecommunications and wireless communications.

69. The IEEE-Standards Association ("IEEE-SA") is the standards development organization within the IEEE responsible for developing and maintaining consensus-based standards in various industries, including the IEEE 802.11 family of wireless networking standards (commonly known as "Wi-Fi"). The IEEE 802.11 standards define specifications for the medium access control ("MAC") and physical ("PHY") layers to enable interoperable wireless local area network implementations. The IEEE-SA requires participants in its standards development process to comply with its patent policy, which governs the disclosure and licensing of patent rights that may be essential to the implementation of an IEEE standard. Participants are required to disclose the existence of patents or pending patent applications that they believe may contain claims essential or potentially essential to a proposed or approved standard. When such disclosure is made, the patent holder is requested to submit a Letter of Assurance ("LOA") stating whether it is

willing to grant licenses to implementers of the relevant standard under terms that are fair, reasonable, and non-discriminatory ("FRAND"), consistent with the IEEE-SA patent policy.

70. BlackBerry participated actively in the IEEE standards development process, including the development of numerous standards within the 802.11 family. On multiple occasions, BlackBerry submitted public LOAs to the IEEE-SA stating that it may own patents containing Essential Patent Claims with respect to certain IEEE 802.11 standards, including the IEEE 802.11-2012, 802.11k, 802.11mb, 802.11n, 802.11p, 802.11r, 802.11s, 802.11u, 802.11v, 802.11w, 802.11y, 802.11z, 802.11aa, 802.11ad, and 802.11ae standards. In those LOAs, BlackBerry further indicated that it was willing to grant licenses under any patents containing Essential Patent Claims on terms that are FRAND.

71. The IEEE Patent Policy makes clear that FRAND negotiations require a reciprocal duty of the SEP holder (Submitter) and licensee (Applicant) to engage in good faith negotiations without unreasonable delay, or alternatively, litigate. Section 6.2 of the current IEEE SA Standards Board Bylaws states:

> The Submitter and the Applicant should engage in good faith negotiations (if sought by either party) without unreasonable delay or may litigate . . . over patent validity, enforceability, essentiality, or infringement; Reasonable Rates or other licensing terms and conditions; compensation for unpaid past royalties or a future royalty rate . . . .

72. As mentioned above, Malikie offered Stellantis the chance to license its SEPs, including those covering IEEE 802.11 standards, on FRAND terms. Malikie has notified Stellantis of infringement of its SEPs since at least 2024. Particularly, Malikie notified Stellantis of its infringement of the '829 Patent, the '289 Patent, and the '212 Patent on April 26, 2024. On or about August 16, 2024, Malikie offered a FRAND royalty rate for all patents essential to the IEEE 802.11 standards. Further, in June 2025, Malikie offered a lump-sum FRAND license proposal for

all patents essential to the IEEE 802.11 standards. As detailed above, Malikie has shared evidence of Defendants' infringement of Malikie's SEPs and made repeated efforts to engage in licensing discussions with Stellantis from January 2024 through June 2026. Almost two years have passed since Malikie's first FRAND offer. Yet Defendants have not accepted Malikie's proposed rate or even counter-offered with a rate that they believe is FRAND.

73. Despite Malikie's numerous attempts to discuss licensing terms with Defendants, none of the Defendants have consented to a license. And despite having been offered a FRAND rate at which to license Malikie's SEPs, Defendants have effectively refused Malikie's rate and have never provided an alternate rate that they believe is FRAND.

74. By not complying with its FRAND obligations, Defendants have waived their rights to demand FRAND compliance from Malikie.

75. Malikie has been left with no choice but to bring this action to enforce its rights as the owner of valid and valuable patents that Defendants are willfully infringing. In addition, Malikie commits to grant licenses on FRAND terms under any patents acquired from BlackBerry that contain Essential Patent Claims relating to any IEEE 802.11 standards, including those with respect to which BlackBerry did not submit an LOA.

76. For each count of infringement listed below, Plaintiffs incorporate and re-state the allegations contained in the preceding paragraphs above, including these General Allegations, as if fully set forth in each count of infringement.

**COUNT I – INFRINGEMENT OF THE '936 PATENT**

77. Plaintiffs incorporate herein the allegations made in paragraphs 1 through 76.

78. Defendants have directly and/or indirectly infringed, and continue to infringe directly and/or indirectly, one or more claims of the '936 Patent, including, for example, claim 7,

in violation of 35 U.S.C. § 271(a) and/or (b) by making, using, selling, offering for sale, and/or importing into the United States the Accused Instrumentalities.

79. An exemplary claim chart demonstrating Defendants' infringement of the '936 Patent, as well as Defendants' customers' infringement of the '936 Patent, which has been induced by Defendants, is attached as Exhibit 7 and incorporated herein by reference.

80. Additionally, Defendants have indirectly infringed, and continue to indirectly infringe, the '936 Patent in violation of 35 U.S.C. § 271(b) at least by inducing dealerships and customers to purchase, demonstrate, test, and/or use the Accused Instrumentalities in a way that directly infringes at least claim 7 of the '936 Patent.

81. On information and belief, despite Defendants' knowledge of the '936 Patent and of their infringement of the '936 Patent, Defendants have not sought to remedy their infringement or sought to identify any good faith belief as to why they do not infringe the '936 Patent.

82. On information and belief, Defendants' actions represented a specific intent to induce infringement of at least claim 7 of the '936 Patent. For example, Defendants offered their dealers and/or customers extensive customer support, instructions, marketing and sales materials, test drives, service, financing, and support that instructed and encouraged their customers to obtain and use the Accused Instrumentalities in an infringing manner, including inducing actions that constitute direct infringement of claim 7 of the '936 Patent.

83. As a result of Defendants' infringement of the '936 Patent, Plaintiffs have suffered and are owed monetary damages adequate to compensate them for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

84. In addition, Defendants' infringing activities detailed in this Complaint have been willful, egregious, wanton, and deliberate in disregard to Plaintiffs' rights, justifying a finding of

willful infringement, enhanced damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**COUNT II – INFRINGEMENT OF THE '170 PATENT**

85. Plaintiffs incorporate herein the allegations made in paragraphs 1 through 84.

86. Defendants have directly and/or indirectly infringed, and continue to infringe directly and/or indirectly, one or more claims of the '170 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a) and/or (b) by making, using, selling, offering for sale, and/or importing into the United States the Accused Instrumentalities.

87. An exemplary claim chart demonstrating Defendants' infringement of the '170 Patent, as well as Defendants' customers' infringement of the '170 Patent, which has been induced by Defendants, is attached as Exhibit 8 and incorporated herein by reference.

88. Additionally, Defendants have indirectly infringed, and continue to indirectly infringe, the '170 Patent in violation of 35 U.S.C. § 271(b) at least by inducing dealerships and customers to purchase, demonstrate, test, and/or use the Accused Instrumentalities in a way that directly infringes at least claim 1 of the '170 Patent.

89. On information and belief, despite Defendants' knowledge of the '170 Patent and of their infringement of the '170 Patent, Defendants have not sought to remedy their infringement or sought to identify any good faith belief as to why they do not infringe the '170 Patent.

90. On information and belief, Defendants' actions represented a specific intent to induce infringement of at least claim 1 of the '170 Patent. For example, Defendants offered their dealers and/or customers extensive customer support, instructions, marketing and sales materials, test drives, service, financing, and support that instructed and encouraged their customers to obtain and use the Accused Instrumentalities in an infringing manner, including inducing actions that constitute direct infringement of claim 1 of the '170 Patent.

91. As a result of Defendants' infringement of the '170 Patent, Plaintiffs have suffered and are owed monetary damages adequate to compensate them for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

92. In addition, Defendants' infringing activities detailed in this Complaint have been willful, egregious, wanton, and deliberate in disregard to Plaintiffs' rights, justifying a finding of willful infringement, enhanced damages under 35 U.S.C. § 284 and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT III – INFRINGEMENT OF THE '451 PATENT

93. Plaintiffs incorporate herein the allegations made in paragraphs 1 through 92.

94. Defendants have directly and/or indirectly infringed, and continue to directly and/or indirectly infringe, one or more claims of the '451 Patent, including, for example, claim 9, in violation of 35 U.S.C. § 271(a) and/or (b) by making, using, selling, offering for sale, and/or importing into the United States the Accused Instrumentalities.

95. An exemplary claim chart demonstrating Defendants' infringement of the '451 Patent, as well as Defendants' customers' infringement of the '451 Patent, which has been induced by Defendants, is attached as Exhibit 9 and incorporated herein by reference.

96. Additionally, Defendants have indirectly infringed, and continue to indirectly infringe, the '451 Patent in violation of 35 U.S.C. § 271(b) at least by inducing dealerships and customers to purchase, demonstrate, test, and/or use the Accused Instrumentalities in a way that directly infringes at least claim 9 of the '451 Patent.

97. On information and belief, despite Defendants' knowledge of the '451 Patent and of their infringement of the '451 Patent, Defendants have not sought to remedy their infringement or sought to identify any good faith belief as to why they do not infringe the '451 Patent.

98. On information and belief, Defendants' actions represented a specific intent to induce infringement of at least claim 1 of the '451 Patent. For example, Defendants offered their dealers and/or customers extensive customer support, instructions, marketing and sales materials, test drives, service, financing, and support that instructed and encouraged their customers to obtain and use the Accused Instrumentalities in an infringing manner, including inducing actions that constitute direct infringement of claim 9 of the '451 Patent.

99. As a result of Defendants' infringement of the '451 Patent, Plaintiffs have suffered and are owed monetary damages adequate to compensate them for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

100. In addition, Defendants' infringing activities detailed in this Complaint have been willful, egregious, wanton, and deliberate in disregard to Plaintiffs' rights, justifying a finding of willful infringement, enhanced damages under 35 U.S.C. § 284 and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT IV – INFRINGEMENT OF THE '212 PATENT

101. Plaintiffs incorporate herein the allegations made in paragraphs 1 through 100.

102. Defendants have directly and/or indirectly infringed, and continue to directly and/or indirectly infringe, one or more claims of the '212 Patent, including, for example, claim 13, in violation of 35 U.S.C. § 271(a) and/or (b) by making, using, selling, offering for sale, and/or importing into the United States the Accused Instrumentalities.

103. An exemplary claim chart demonstrating Defendants' infringement of the '212 Patent, as well as Defendants' customers' infringement of the '212 Patent, which has been induced by Defendants, is attached as Exhibit 10 and incorporated herein by reference.

104. Additionally, Defendants have indirectly infringed, and continue to indirectly infringe, the ’212 Patent in violation of 35 U.S.C. § 271(b) at least by inducing dealerships and customers to purchase, demonstrate, test, and/or use the Accused Instrumentalities in a way that directly infringes at least claim 13 of the ’212 Patent.

105. On information and belief, despite Defendants’ knowledge of the ’212 Patent and of their infringement of the ’212 Patent, Defendants have not sought to remedy their infringement or sought to identify any good faith belief as to why they do not infringe the ’212 Patent.

106. On information and belief, Defendants’ actions represented a specific intent to induce infringement of at least claim 13 of the ’212 Patent. For example, Defendants offered their dealers and/or customers extensive customer support, instructions, marketing and sales materials, test drives, service, financing, and support that instructed and encouraged their customers to obtain and use the Accused Instrumentalities in an infringing manner, including inducing actions that constitute direct infringement of claim 13 of the ’212 Patent.

107. As a result of Defendants’ infringement of the ’212 Patent, Plaintiffs have suffered and are owed monetary damages adequate to compensate them for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

108. In addition, Defendants’ infringing activities detailed in this Complaint have been willful, egregious, wanton, and deliberate in disregard to Plaintiffs’ rights, justifying a finding of willful infringement, enhanced damages under 35 U.S.C. § 284, and attorneys’ fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT V – INFRINGEMENT OF THE ’829 PATENT

109. Plaintiffs incorporate herein the allegations made in paragraphs 1 through 108.

110. Defendants have directly and/or indirectly infringed, and continue to directly and/or indirectly infringe, one or more claims of the ’829 Patent, including, for example, claim 1, in violation of 35 U.S.C. § 271(a) and/or (b) by making, using, selling, offering for sale, and/or importing into the United States the Accused Instrumentalities.

111. An exemplary claim chart demonstrating Defendants’ infringement of the ’829 Patent, as well as Defendants’ customers’ infringement of the ’829 Patent, which has been induced by Defendants, is attached as Exhibit 11 and incorporated herein by reference.

112. Additionally, Defendants have indirectly infringed, and continue to indirectly infringe, the ’829 Patent in violation of 35 U.S.C. § 271(b) at least by inducing dealerships and customers to purchase, demonstrate, test, and/or use the Accused Instrumentalities in a way that directly infringes at least claim 1 of the ’829 Patent.

113. On information and belief, despite Defendants’ knowledge of the ’829 Patent and of their infringement of the ’829 Patent, Defendants have not sought to remedy their infringement or sought to identify any good faith belief as to why they do not infringe the ’829 Patent.

114. On information and belief, Defendants’ actions represented a specific intent to induce infringement of at least claim 1 of the ’829 Patent. For example, Defendants offered their dealers and/or customers extensive customer support, instructions, marketing and sales materials, test drives, service, financing, and support that instructed and encouraged their customers to obtain and use the Accused Instrumentalities in an infringing manner, including inducing actions that constitute direct infringement of claim 1 of the ’829 Patent.

115. As a result of Defendants’ infringement of the ’829 Patent, Plaintiffs have suffered and are owed monetary damages adequate to compensate them for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

116. In addition, Defendants' infringing activities detailed in this Complaint have been willful, egregious, wanton, and deliberate in disregard to Plaintiffs' rights, justifying a finding of willful infringement, enhanced damages under 35 U.S.C. § 284, and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**COUNT VI – INFRINGEMENT OF THE '289 PATENT**

117. Plaintiffs incorporate herein the allegations made in paragraphs 1 through 116.

118. Defendants have directly and/or indirectly infringed, and continue to directly and/or indirectly infringe, one or more claims of the '289 Patent, including, for example, claim 6, in violation of 35 U.S.C. § 271(a) and/or (b) by making, using, selling, offering for sale, and/or importing into the United States the Accused Instrumentalities.

119. An exemplary claim chart demonstrating Defendants' infringement of the '289 Patent, as well as Defendants' customers' infringement of the '289 Patent, which has been induced by Defendants, is attached as Exhibit 12 and incorporated herein by reference.

120. Additionally, Defendants have indirectly infringed, and continue to indirectly infringe, the '289 Patent in violation of 35 U.S.C. § 271(b) at least by inducing dealerships and customers to purchase, demonstrate, test, and/or use the Accused Instrumentalities in a way that directly infringes at least claim 6 of the '289 Patent.

121. On information and belief, despite Defendants' knowledge of the '289 Patent and of their infringement of the '289 Patent, Defendants have not sought to remedy their infringement or sought to identify any good faith belief as to why they do not infringe the '289 Patent.

122. On information and belief, Defendants' actions represented a specific intent to induce infringement of at least claim 6 of the '289 Patent. For example, Defendants offered their dealers and/or customers extensive customer support, instructions, marketing and sales materials,

test drives, service, financing, and support that instructed and encouraged their customers to obtain and use the Accused Instrumentalities in an infringing manner, including inducing actions that constitute direct infringement of claim 6 of the ’289 Patent.

123. As a result of Defendants’ infringement of the ’289 Patent, Plaintiffs have suffered and are owed monetary damages adequate to compensate them for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

124. In addition, Defendants’ infringing activities detailed in this Complaint have been willful, egregious, wanton, and deliberate in disregard to Plaintiffs’ rights, justifying a finding of willful infringement, enhanced damages under 35 U.S.C. § 284, and attorneys’ fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## DEMAND FOR A JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues triable of right by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in its favor and grant the following relief:

a. A judgment that Defendants have directly and/or indirectly infringed one or more claims of each of the Patents-in-Suit either literally or under the doctrine of equivalents;

b. A judgment requiring Defendants to pay Plaintiffs damages under 35 U.S.C. § 284 for their past, present, and future infringement, as applicable, of each of the Patents-in-Suit, including an accounting for any sales or damages not presented at trial;

c. A judgment and order that Defendants have willfully infringed the Patents-in-Suit

and requiring Defendants to pay Plaintiffs enhanced damages under 35 U.S.C. § 284 and attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285;

d. A judgment that Defendants account for and pay to Plaintiffs a reasonable, ongoing, post-judgment royalty for any continuing infringing activities not already accounted for;

e. A permanent injunction enjoining Defendants and their officers, agents, representatives, assigns, licensees, distributors, employees, related entities, and all those acting in privity or in concert with Defendants from further infringement of the Patents-in-Suit;

f. A judgment and order requiring Defendants to pay Plaintiffs prejudgment and post-judgment interest on the damages awarded;

g. A judgment and order requiring Defendants to pay Plaintiffs' costs; and

h. Such other and further relief as the Court may deem just and proper.

Dated: July 27, 2026

Respectfully submitted,

*/s/ Timothy E. Grochocinski*
Timothy E. Grochocinski
Illinois Bar No. 6295055
tim@nelbum.com
C. Austin Ginnings
Illinois Bar No. 6343678
austin@nelbum.com
Taryn N. Trusty
Illinois Bar No. 6344409
taryn@nelbum.com
NELSON BUMGARDNER CONROY PC
745 McClintock Drive, Suite 340
Burr Ridge, Illinois 60527
708.675.1974 (telephone)

Brent Bumgardner
Texas Bar No. 00795272
brent@nelbum.com
NELSON BUMGARDNDER CONROY PC
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
817.377.9111 (telephone)

*Attorneys for Plaintiffs*
*Malikie Innovations Ltd. and*
*Key Patent Innovations Ltd.*